Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WIL CASEY FLOYD, <br><br> Defendant. | NO. CR17-149RSM <br><br> UNITED STATES' SENTENCING MEMORANDUM |

**I.     Factual Background.**

**A.  Floyd's Use of Molotov Cocktails on May Day 2016.**

Wil Floyd was eagerly awaiting the planned protests in downtown Seattle on May 1, 2016, and he prepared carefully for the event. Floyd began discussing assaulting Seattle Police Department ("SPD") officers with explosives at least seven weeks earlier. On March 8, 2016, in response to a text message from a fellow anarchist stating, "I'm so fucking done with SPD . . .," Floyd responded: "*Kill them all with fire*." (emphasis added).

On the morning of May 1, 2016, Floyd and others met at Floyd's apartment in the International District of Seattle. According to Floyd, he and his associates were inspired by violent anarchist groups in Greece and South America, which are infamous for their

GOV'S SENTENCING MEMORANDUM - 1
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

use of Molotov cocktail devices against police officers during protests. Following suit, Floyd and his associates manufactured six Molotov cocktails for use during the Seattle May Day protest later that day. Floyd took the lead on manufacturing the devices. He personally gathered all of the materials to make the Molotov cocktails, including beer bottles, gasoline, and tampons for use as ignition wicks. He and the others then assembled the devices so that they were operational.

Floyd next designed a homemade divider system out of cardboard and plastic that he fit inside of a black shoulder bag. This allowed Floyd to conceal the six Molotov cocktails in the bag so that they were secure and upright, preventing the gasoline from spilling out. Floyd placed several additional items into the bag, including black zip-ties, road flares, cans of black spray paint, and wire cutters.

Prior to heading out to the protest, Floyd and his associates donned "black-bloc" attire in order to conceal their identities. Floyd wore all black clothing, including a black hood over his head and a gas mask on his face. Floyd took the black bag containing the Molotov cocktails to the protest and carried it the entire time.

In the late afternoon of May 1, 2016, approximately 200 individuals gathered at Westlake Plaza and later marched through downtown Seattle. Approximately 50 of these individuals, including Floyd and his associates, were dressed in black-bloc attire and marched together in a close group. At approximately 7:30 p.m., uniformed SPD officers directed the crowd of marchers towards the intersection of 4th Avenue South and South Seattle Boulevard. Within minutes of arriving at the intersection, people in the black-bloc crowd began throwing objects at SPD officers.

At that point, Floyd reached into his bag and began throwing the Molotov cocktails directly at approaching police officers. Floyd threw five Molotov cocktails at the officers, and left one in the bag. Floyd did not light the Molotov cocktails prior to throwing them at the officers. However, one of the devices shattered on the ground and seconds later combusted with a police flash-bang device. This caused an explosion and

GOV'S SENTENCING MEMORANDUM - 2
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fire, resulting in burn injuries to one of the officers, who was transported to Harborview Medical Center for treatment.

Floyd then quickly discarded his black-bloc clothing and put the black bag down on a street corner, with the one remaining Molotov cocktail intact. Floyd successfully fled the area prior to being positively identified or apprehended by police officers. He was ultimately arrested nearly one year later, after an extensive investigation conducted by the FBI and SPD.

**B. Floyd's Electronic Communications and Facebook Posts.**

Floyd's electronic communications leading up to and following the protest on May 1, 2016, are illuminating of Floyd's mindset and intent. These communications – discovered after the fact by law enforcement agents through the execution of search warrants – confirm that Floyd's use of the Molotov cocktails at the protest was premeditated and motivated by a disdain for law enforcement.

As noted above, nearly two months prior to May Day, on March 8, 2016, Floyd sent a text message stating, "Kill them all with fire," referring to SPD officers. This communication was recovered through the execution of a search on Floyd's smartphone. *See* Exhibit 1 at 2 (FBI report).

In the hours before the protest on May 1, 2016, Floyd posted on his Facebook page multiple messages alluding to what he planned to do at the protest. For example,

> On April 30, 2016, at 11:50 p.m., Floyd posted a hyperlink to documents entitled "May Day Undercovers." The documents provided information about plainclothes police officers who would likely be present at a May Day event. Directly above the hyperlink, Floyd added the following text: "Soooooooo This is important."

> On May 1, 2016, at 11:16 a.m., Floyd reposted a photograph from another Facebook user featuring a red and black colored flag with the title, "MAYDAY International Workers Day," along with a hyperlink to an article called "May Day Around the World." Above the photograph Floyd wrote, "Happy May Day, my loves." In the comments section beneath the link, another Facebook user wrote, "Wish I could be in Seattle today." Floyd replied to the comment with: "It's gunna be a ***blast***," accompanied by a smiley face emoticon. (Emphasis added.)

GOV'S SENTENCING MEMORANDUM - 3
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 1, 2016, at 11:35 a.m., Floyd posted a graphic of a hand holding a flaming Molotov cocktail with the title, "THE RIOT IS ONE NIGHT… BUT METADATA LAST FOREVER." The graphic also featured text along the right side that included advice such as, "Cover Your Face And Hair," "Wear Gloves," "Don't Put Your Picture Online," and "Never Snitch, Ever." Directly above the graphic, Floyd wrote, "Happy May Day, comrades. And, remember…"

*See* Complaint (Dkt. 1) at 5-6; PSR ¶ 12-13.

After the protest, Floyd celebrated his use of the Molotov cocktails and more generally the injuries suffered by SPD officers at the hands of the violent protesters. On May 1, 2016, at 10:45 p.m., just hours after he fled from the protest, Floyd reposted a photograph on his Facebook page depicting a female SPD officer tending to a male SPD officer who had sustained a large, bloody laceration above his left eye. The photo had text reading, "It's No Fun When They Fight Back." Directly above the photograph, Floyd wrote, "Hahahahahahahahahahahahahahahaha. Fuck you, pig. Cry me a fucking river." *See* Complaint at 6; PSR ¶ 14.

Similarly, on May 20, 2016, Floyd sent a text message to one of his anarchist associates with an attached photograph of a uniformed police officer with his head and face on fire. *See* Exhibit 1 at 3.

**II.     The Sentencing Guidelines Calculations.**

The government concurs with the Sentencing Guidelines calculations set forth in the Presentence Report. The Probation Office correctly calculates the total offense level at 23, the Criminal History Category is I, and the advisory Sentencing Guidelines range to be 46-57 months.

The only Sentencing Guidelines issue the government calls the Court's attention to is the PSR's application of a four-level enhancement under USSG § 2K2.1(6)(B), because the defendant possessed the destructive devices in connection with another felony offense, that is, Assault in the Third Degree under the Revised Code of Washington. Under the Plea Agreement (¶ 8), the defendant maintained the right to object to this enhancement. However, because the defendant has not objected to any of

GOV'S SENTENCING MEMORANDUM - 4
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Guidelines Calculations in the Presentence Report (*see* PSR Addendum at 1), it is unclear whether he continues to contest this enhancement.

In any event, the government submits that the Probation Office correctly applied this enhancement. Third Degree Assault includes the assault of "a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." RCW 9A.36.031(1)(g). In this case, Floyd admits to throwing five Molotov cocktails directly at police officers who were on duty at the May Day protest. Floyd admitted this in both the Plea Agreement and during an interview with law enforcement. Plea Agreement ¶ 7 ("Floyd threw five of the Molotov cocktails at approaching Seattle Police Department officers."); Interview Transcript 4/20/17 at 19 ("I'm not going to lie and say that I wasn't throwing them at the police. I was."). This conduct meets the definition of assault as defined in the Washington State model jury instructions. WPIC 35.50 (defining an assault as "an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.").

### III. Sentencing Recommendation.

For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 37 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office. The various statutory sentencing factors support a custodial sentence of 37 months in this case, including, most prominently, the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the history and characteristics of the defendant; and the need for the sentence to afford adequate deterrence to criminal conduct.

///

///

GOV'S SENTENCING MEMORANDUM - 5
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## A. The Nature/Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment.

The offense conduct in this case is extremely serious and warrants substantial punishment. The defendant planned and prepared to commit his crimes at the May Day protest: he discussed "kill[ing]" police officers "with fire" weeks prior to the protest; he gathered all of the necessary materials and constructed the Molotov cocktails the morning of the protest; he built a custom divider for his black bag in order to carry and conceal the devices; he donned black-bloc clothing to conceal his identity; and as police officers approached him and his associates on the street, he threw five Molotov cocktails directly at the officers. This crime was a premeditated violent act.

The government acknowledges one significant mitigating aspect of the defendant's offense conduct – that he did not light the Molotov cocktails prior to throwing them at the police officers. This fact is the primary reason the government is recommending a below-Guidelines sentence in this case, and not a substantially higher sentence. Nonetheless, the defendant's actions created a dangerous situation for the police officers and protesters who were nearby the shattered Molotov cocktails, which needed only a small spark to explode. The defendant's conduct created a significant likelihood that someone – especially one of the officers – would be injured. And that, of course, is exactly what happened.

## B. Floyd's History and Characteristics.

Floyd's history and characteristics are largely mitigating. He has no criminal history; struggles with mental health and emotional issues; and did not always have access to the familial support he needed.

On the other hand, Floyd's close association with anarchist groups who espouse violence is an aggravating aspect of his history and characteristics and one that directly led to his offense conduct. For months prior to the offense, Floyd associated with a portion of the anarchist community that condones and promotes violence against police officers. During an interview with the FBI, Floyd admitted that he and his associates

GOV'S SENTENCING MEMORANDUM - 6
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

were attempting to emulate the violence engaged in by notorious anarchist groups in foreign countries. Specifically, when asked by an agent why Floyd and his associates made the Molotov cocktails, Floyd answered:

> [W]e see them on videos from Greece and Chile. . . . The Greek anarchists are effective. . . . They're really effective. . . . There are spots in the city that people won't go because they are so powerful. And they love Molotovs. And that's what it was. So, we wanted to emulate the – the global anarchists that we look up to because North American anarchists are, well, ineffective. [laughs] Let's put it that way.

Interview Transcript 4/20/17 at 28-29.

Although Floyd's association with anarchists who espouse violence is an aggravating factor, the government acknowledges that during the year between the offense conduct and his arrest in late April 2017, Floyd on his own volition had disassociated from the anarchist individuals who radicalized him and who participated alongside Floyd in the events of May 1, 2016. The defendant now recognizes the negative influence these individuals had upon his life. This also factored into the government's below-Guidelines recommendation.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct.

This case presents the Court with a unique opportunity to send an important message of "general deterrence." Although the concept of general deterrence is often discussed at sentencing hearings, the circumstances of this case place this particular sentencing factor at the front and center of the analysis.

The defendant's offense did not occur in a vacuum. This Court is familiar with the recent history in downtown Seattle involving acts of violence committed by small minorities of protesters on May Day and other occasions. Individuals who, like Wil Floyd, have committed violence and property destruction in Seattle in the name of the anarchist movement.

These same anarchists and their sympathizers throughout the Pacific Northwest are paying close attention to the instant case. For example, two prominent anarchist

GOV'S SENTENCING MEMORANDUM - 7
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

websites – *Puget Sound Anarchists* and *Its Going Down* – regularly have blogged about Floyd's arrest and prosecution. Three examples of these blog postings are attached as Exhibits 2, 3, and 4. As reflected therein, these blogs discussed the details of the forensic and other evidence in the case against Floyd; speculated that Floyd may have cooperated with the FBI against other anarchists and condemned Floyd for doing so; discussed the FBI's continuing investigation, including the execution of DNA search warrants on other suspects; attempted to "out" the names of the involved FBI agents and the Magistrate Judge in the Western District of Washington who authorized the DNA warrants; and characterized the FBI's investigation as the "harassment of anarchists."

There is no doubt that these same organizations and those who condone violence and property destruction in the name of the anarchist movement will be paying close attention to the sentence imposed by the Court in this case. The Court should take this valuable opportunity to send a powerful deterrent message to these individuals. We know there will be future May Day protests in Seattle. The government's hope is that before the next anarchist wearing black-bloc pulls out a Molotov cocktail and throws it at a police officer, he thinks about the sentence imposed by the Court in this case and reconsiders. A term of 37 months – slightly more than three years – in federal prison would send that message.

///
///
///

GOV'S SENTENCING MEMORANDUM - 8
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1-28 numbered lines

## IV. Conclusion.

For all of the reasons set forth above, the government recommends that the Court sentence the defendant to a term of imprisonment of 37 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

DATED this 25th day of May, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

  /s Todd Greenberg
TODD GREENBERG
THOMAS M. WOODS
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-3903
Facsimile: 206-553-4440
Phone: 206-553-2636
E-mail: Todd.Greenberg4@usdoj.gov

GOV'S SENTENCING MEMORANDUM - 9
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Kathleen M. McElroy*
KATHLEEN M. McELROY
Paralegal Specialist
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Fax:       206-553-0882
GOV'S SENTENCING MEMORANDUM - 10
CR17-149RSM; WIL CASEY FLOYD

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970